ANDRE BIROTTÉ JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
PAUL G. STERN (State Bar # 162734)
HARVINDER S. ANAND (State Bar # 243913)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-0715/2624
    Email:paul.stern@usdoj.gov
          harvinder.anand@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR-08-1443-ODW |
| Plaintiff, | GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE PURSUANT TO USSG § 5K1.1, POSITION RE: BOOKER FACTORS AND FINAL SENTENCING RECOMMENDATION |
| v. | |
| GARY A. RAY, | |
| Defendant. | Sentencing Date: 12/17/10<br>Sentencing Time: 3:00 p.m. |

Plaintiff, United States of America, by and through its attorney of record hereby: (1) moves pursuant to section 5K1.1 of the advisory Sentencing Guidelines for a downward departure from defendant Gary A. Ray's ("defendant") otherwise applicable advisory sentencing Guideline range for substantial cooperation; (2) addresses the pertinence of specified Booker factors in fashioning a reasonable sentence for defendant; and (3) sets forth its final sentencing recommendation for defendant.

///
///

The government's motion and analysis of pertinent sentencing factors under 18 U.S.C. § 3553 are based on the attached memorandum of points and authorities, the pre-sentence report, the government's response to the pre-sentence report, the files and records in this case, and any further evidence or argument that the court may wish to consider at defendant's sentencing hearing on December 17, 2010.

Dated: December 6, 2010            Respectfully submitted,

ANDRE BIROTTÉ JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

           /s/
PAUL G. STERN
HARVINDER S. ANAND
Assistant United States Attorneys
Major Frauds Section

Counsel for Plaintiff United States of America

## TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . 1

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  MOTION FOR DOWNWARD DEPARTURE UNDER USSG § 5K1.1 . . . . 2

     A.   The Government Requests A Downward Departure In
          Defendant's Offense Level Based On Defendant's
          Substantial Assistance . . . . . . . . . . . . . . . . 2

     B.   Summary Of Defendant's Assistance To The Government . 4

     C.   Bases Of The Government's Departure Recommendation . 7

          1.   Defendant's cooperation has been significant
               and useful . . . . . . . . . . . . . . . . . . . 7

          2.   Defendant has generally provided truthful,
               complete and reliable information over the full
               course of his cooperation . . . . . . . . . . . 8

          3.   Nature and extent of the assistance . . . . . . 9

          4.   The requested departure will result in a sentence
               that is reasonable in light of all the other
               circumstances of the case . . . . . . . . . . . 9

III. GOVERNMENT'S RESPONSE TO THE USPO's *BOOKER* ANALYSIS . . 10

IV.  THE USPO'S RECOMMENDATION OF THREE YEARS PROBATION
     IS REASONABLE IN VIEW OF KARATZ'S PROBATIONARY SENTENCE   13

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

The government hereby moves, pursuant to USSG § 5K1.1, for a downward departure of eight levels in the advisory Guideline range otherwise applicable to defendant Gary A. Ray ("defendant"), based upon defendant's substantial assistance in the investigation and prosecution of co-schemer Bruce A. Karatz ("Karatz"), as described in detail in section II, below.

Assuming the Court grants the government's downward departure motion, defendant's advisory Guidelines offense level would properly be calculated as 10, resulting in an advisory sentence range of 6-12 months, which includes the option of imposing a sentence of probation. For the reasons set forth below, the government agrees with the conclusion of the United States Probation Office ("USPO")[1] that a three-year probationary sentence is appropriate in this case.

In particular, given that defendant: (1) pled guilty to the charges at issue in this case prior to even being indicted; (2) has cooperated in good faith with the government, rendered substantial assistance and fully accepted responsibility for his involvement in the criminal misconduct at issue, thereby suffering significant adverse personal and familial consequences

---

[1] As argued in section III below, the government does not agree with all of the grounds adduced by the USPO in support of its recommendation, but it does concur in the recommended result, namely, imposition of a sentence of three years probation, which the government submits is a fair and just sentence in this case.

1

over an extended time period; and (3) played a less significant role (and benefitted to a much lesser extent) in the underlying offense conduct than Karatz, who has already received a sentence of five years probation with eight months of home detention, the government urges the Court, in the interests of justice, to impose a sentence upon defendant that is proportionally more lenient than that imposed on Karatz.[2]

Accordingly, the government respectfully recommends that defendant be sentenced to a term of three years probation, with no condition of home confinement, 400 hours of community service and a $10,000 fine.

II

MOTION FOR DOWNWARD DEPARTURE UNDER USSG § 5K1.1

A. The Government Requests A Downward Departure In Defendant's Offense Level Based On Defendant's Substantial Assistance

Pursuant to USSG § 5K1.1, the government hereby moves for an 8-level downward departure in the calculation of defendant's advisory Guidelines offense level, based on defendant's provision

---

[2] Notwithstanding the government's stated legal and factual objections to the terms of Karatz's sentence, set forth in its sentencing filings in United States v. Bruce Karatz, CR 09-203-ODW ("the Karatz case"), the sentence already imposed on co-schemer Karatz should fairly serve as a benchmark for the Court in fashioning a reasonable, and more lenient, sentence for defendant in this particular case. The interests of justice require that the terms of Karatz's and defendant's respective sentences be proportional to one another and take account of the differences in their respective levels of culpability, the differing manner in which they have respectively accepted responsibility and expressed contrition for their jointly-undertaken criminal misconduct, and the extent to which defendant has rendered substantial assistance to the government.

of substantial assistance to the government. Among other assistance, defendant provided useful information and evidence, through numerous lengthy pre-indictment and pre-trial interviews and reviews of documentary evidence and internal email records, relating to the criminal conduct of Karatz, as well as to the conduct of others at KB Home who were used by Karatz to realize his criminal objectives, including several members of the Board of Directors, the deputy general counsel, general counsel and chief accounting officer.

Defendant resolved his own case with the government through a pre-indictment plea in December 2008 to conspiring with Karatz in 2006 to obstruct justice through the creation of a false internal company report, which was designed to impede a contemplated Securities and Exchange Commission ("SEC") investigation into stock option backdating at KB Home. Defendant's cooperation substantially assisted the government in returning a 20-count indictment against Karatz in March 2009 for the more comprehensive offenses of mail, wire and securities fraud (covering the 1999-2006 time period), and in ultimately securing guilty verdicts against Karatz in April 2010 following trial on mail and securities fraud charges. Defendant testified at trial in the government's case-in-chief against Karatz over the course of four days and was subject to extensive cross-examination by counsel for Karatz.

On February 6, 2009, defendant entered his guilty plea to a one-count Information charging him with having conspired with

Karatz in 2006 to obstruct justice in that defendant and Karatz jointly collaborated in causing the preparation of a false report on KB Home's historical stock option granting process, with the intent to impede a contemplated SEC investigation. The USPO has calculated defendant's total advisory Guidelines offense level as 18 (including credit for acceptance of responsibility), and his criminal history category as I, resulting in a pre-departure (and pre-Booker variance) sentencing range of 27-33 months. The USPO's Guidelines analysis conforms to the stipulated pre-departure Guidelines calculation set forth in defendant's plea agreement. If accepted by the Court, the government's recommended eight-level § 5K1.1 departure would result in an offense level of 10 and a reduced sentencing range of 6-12 months, in Zone B of the advisory Guidelines sentencing table, which affords the Court the option of imposing a probationary sentence.

B.    Summary Of Defendant's Assistance To The Government

Since defendant began cooperating with the government in October 2008, he met with the government on seventeen separate occasions and provided the following information, covering meetings both before and after he entered his guilty plea, including several pre-trial preparation sessions:

(1)   At a series of three initial meetings between October 6-8, 2008, defendant consistently described in detail how he and Karatz jointly decided to come up with a price-neutral explanation of how they determined the grant date for KB Home's

stock options, thereby concealing from KB Home's general counsel, Ben Hirst, the fact that they used hindsight pricing to secure a below-market exercise price for KB Home's stock option grants. Within the context of these initial interviews, defendant provided a detailed chronology of events and meetings between and among himself, Karatz and Hirst, through which defendant's and Karatz's false account of the manner in which they determined the grant date of KB Home's stock options awards evolved and was incorporated into the final version of Hirst's report to KB Home's Audit Committee.

(2) At two followup interviews held on October 22-23, 2008, defendant provided additional historical information regarding 1998 discussions between and among Karatz, defendant and a KB Home compensation consultant regarding a compensation opportunity for Karatz. This opportunity involved the possibility that Karatz would be allowed to purchase approximately one million stock options from KB Home at a steep discount, in exchange for Karatz agreeing to forego approximately $1 million in salary from KB Home. Eventually this stock option discount purchase program, which Karatz aggressively pursued, was rejected in September 1998 by the Chairman of the Compensation Committee at that time, James Johnson. The information provided by defendant was helpful in that it served to explain why Karatz eventually decided to resort to the procedure of stock option backdating to enhance the value of his own stock options, while simultaneously electing not to inform the Compensation Committee of his decision to enhance the

value of his own stock options through the practice of backdating.

(3) At a further followup meeting on December 3, 2008, defendant made it clear that Karatz expressly instructed him that they were going to change the previous practice of using grant dates coincident with the Compensation Committee meeting, and instead they were going to use hindsight as a means of obtaining a lower strike price for KB Home's option grants.  When defendant asked Karatz whether they needed to inform the Compensation Committee of this change in practice, defendant indicated that Karatz told him the Compensation Committee did not need to know because defendant and Karatz had the discretion to initiate this change in practice on their own.  The information provided by defendant regarding Karatz's instruction to keep their use of hindsight pricing hidden from the Compensation Committee was significant evidence of defendant's and Karatz's intent in going forward with their backdating scheme.  Defendant's testimony in this connection was corroborated both by documentary evidence and by testimony from several members of the Compensation Committee, reflecting that the Compensation Committee was never informed about defendant's and Karatz's use of hindsight pricing.  Absent defendant's testimony, the evidence as to Karatz's fraudulent intent in deliberately concealing his backdating practices from KB Home's Board was essentially circumstantial.

(4) In preparing for his trial testimony between November 2009 and February 2010, defendant met with the government on

6

eleven further occasions, reviewing documents and refreshing his recollection about many detailed matters relating to the administration of KB Home's stock option program and the joint efforts by him and Karatz to conceal their use of hindsight pricing from KB Home's Board, management and shareholders between May and August 2006.  In connection with these meetings, defendant repeatedly reviewed voluminous records and diligently responded to inquiries regarding a wide range of topics relating to his and Karatz's use of hindsight pricing and their decision to coverup these practices when questions arose from KB Home's legal department and Audit Committee in 2006.

(5) As part of his cooperation, defendant testified in the government's case-in-chief over a period of four days, and he was subject to vigorous cross-examination by counsel for defendant Karatz for close to two days.

## C. Bases Of The Government's Departure Recommendation

### 1. Defendant's cooperation has been significant and useful

As set forth above, defendant's cooperation significantly assisted the government in the investigation and prosecution of co-schemer/conspirator Karatz.  Absent defendant's substantial assistance, the case against Karatz would have been largely circumstantial.  Indeed, defendant's direct testimony with respect to the entire time period in which backdating was used by defendant and Karatz was critical in establishing the scope of the fraudulent scheme with which defendant Karatz was ultimately charged and convicted.

2.  <u>Defendant has generally provided truthful, complete and reliable information over the full course of his cooperation</u>

In his dealings with the government following his decision to cooperate, defendant made a good faith effort to be fully forthcoming and candid, even though the process of defendant's coming to terms with what he did was painful and difficult for him.  Notwithstanding defendant's good faith efforts, it must be conceded that in his initial meetings with the government defendant was not prepared to admit the full scope of the wrongdoing at issue.  In this respect, defendant tried to minimize in certain critical respects the nature of his own misconduct, and he only gradually came to concede that he and Karatz deliberately hide their use of hindsight pricing from KB Home's Board and other members of KB Home's management starting in 1999.  While it is fair to say that defendant was not fully truthful, particularly with respect to his pre-2006 conduct, in his initial meetings with the government, a fact he was compelled repeatedly to concede during cross-examination at trial in the <u>Karatz</u> case, it is the government's overall assessment that defendant was truthful and candid over the full course of his cooperation, and this cooperation thereby significantly assisted the government in its investigation and prosecution of the matters at issue.

///
///
///

8

### 3. Nature and extent of the assistance

Defendant has provided substantial cooperation in assisting in the investigation and prosecution of co-schemer Karatz, and he has not hesitated to provide relevant information about other individuals who were also used to carry out the fraudulent scheme at issue. In a number of different instances, defendant provided information about aspects of the fraud of which the government would otherwise have had no knowledge or understanding. Moreover, it is the government's belief that defendant's admission of his own wrongdoing came at a substantial cost to him personally, resulting in harm to defendant's own reputation and having adverse ramifications in personal and familial relationships.

### 4. The requested departure will result in a sentence that is reasonable in light of all the other circumstances of the case

The requested eight-level departure will result in an advisory sentencing range for defendant of 6-12 months, falling within zone B of the sentencing table and permitting a term of probation as a sentencing option. Given the scope and usefulness of defendant's cooperation as set forth above, a sentence in this range is entirely appropriate and reasonable, particularly in light of the probationary sentence already imposed upon co-schemer Karatz, who was more culpable and benefitted to a far greater extent from the criminal misconduct at issue.

For the foregoing reasons, as well as for the reasons stated below, a resulting sentence of three years probation, with no

home detention, will be reasonable and appropriate for this defendant.

### III

### GOVERNMENT'S RESPONSE TO THE USPO's *BOOKER* ANALYSIS

While the government concurs with the USPO's sentencing recommendation of three years probation for this defendant, it does not agree with at least one of the bases adduced for its recommendation, namely, that a downward Booker variance from the otherwise applicable Guideline offense level is warranted here because the Guideline offense level for defendant's obstructive conduct, yielding an offense level of 18 (with credit for acceptance of responsibility), overstates the seriousness of his defendant's offense conduct.[3]

Contrary to the USPO (and defendant), defendant's and Karatz's obstructive conduct was serious and significant. This obstructive conduct involved the creation of a false corporate record, namely, the Hirst report, which was then used by defendant and Karatz to conceal their unauthorized backdating practices not only from the SEC, but also from corporate officers and accountants responsible for ensuring accurate financial reporting to the SEC, namely, KB Home's Audit Committee and its outside accountants. Defendant's and Karatz's obstructive conduct, which was criminal by defendant's own admission, thereby

---

[3] In his Response to the Presentence Report and related letter to the court, defendant concurs with the USPO's assessment that the Guideline offense level mandated by USSG § 2J1.2 overstates the seriousness of defendant's offense. For the reasons stated below, the government respectfully disagrees.

10

facilitated the commission of two further felonies found by the jury at Karatz's trial, namely, Karatz's lying to KB Home's outside auditors (who were furnished with, and relied upon, the false Hirst report), and Karatz's lying in a false second quarter Form 10-Q, which contained material omissions premised on the false assurances in the Hirst report that there was no backdating at KB Home. In this respect, the creation of the false Hirst report, for which defendant was in part responsible, was inextricably intertwined with the commission of the two further Title 15 felonies of lying to auditors and lying to KB Home's shareholders, both of which certainly represent serious criminal misconduct.

The USPO opines that defendant's conduct is not as "egregious" as more typically obstructive conduct such as the "altering of evidence." The government respectfully submits that this opinion ignores that the creation of a false corporate record, such as the Hirst report, is virtually indistinguishable from the altering of evidence. The preparation of such a document reflects a deliberate and knowing creation of a false corporate record in order to enable responsible corporate officers of public companies to conceal financial transactions they are statutorily obligated to report accurately in SEC filings; in this respect, such activity is no different from deliberating altering bookkeeping entries or shredding emails to accomplish a similar purpose of hiding the genuine results of a company's financial operations.

The USPO further notes that defendant's obstructive conduct was atypical because it did not involve an "ongoing investigation." However, the plain language of 18 U.S.C. § 1519 does not require the existence of a pending governmental proceeding for obstruction, but requires only that the wrongdoer act with obstructive intent "<u>in relation to</u>" or "<u>in contemplation of</u>" a matter within the jurisdiction of any department or agency. 18 U.S.C. § 1519 (emphasis added). The legislative history of section 1519 demonstrates that, in the aftermath of the <u>Arthur Andersen</u> and <u>Enron</u> cases, Congress intended to eliminate the requirement that obstructive conduct be tied by intent to any pending or even imminent proceeding in order to be criminal. Thus, Senator Patrick Leahy, who drafted the obstruction-of-justice provisions of section 1519 described the intent element of this statute in detail:

> [T]his section would create a new <u>20-year felony</u> which could be effectively used in a wide array of cases where a person destroys or <u>creates</u> evidence with the intent to obstruct an investigation or matter that is, as a factual matter, within the jurisdiction of any federal agency or any bankruptcy. It also covers acts <u>either in contemplation of</u> or <u>in relation to</u> such matters . . . [T]he intent required is the intent to obstruct, not some level of knowledge about the agency processes of [sic] the precise nature of the agency of [sic] court's jurisdiction. The statute is specifically not meant to include any technical requirement . . . to tie the obstructive conduct to a <u>pending</u> or <u>imminent</u> proceeding by intent or otherwise.

148 Cong. Rec. S7,418-19 (statement of Sen. Leahy) (emphases added). Accordingly, an assessment that defendant's obstructive conduct was not as serious as the typical case involving an existing or pending investigation appears to be inconsistent with

the intent of Congress in enacting 18 U.S.C. § 1519.[4]

## IV
## THE USPO'S RECOMMENDATION OF THREE YEARS PROBATION IS REASONABLE IN VIEW OF KARATZ'S PROBATIONARY SENTENCE

Although as explained above the government maintains that defendant's pre-departure Guidelines offense level of 18 does not overstate the seriousness of his offense, the government fully concurs with the USPO's general assessment that defendant should receive a sentence commensurate with, or proportional to, the sentence already imposed on co-schemer Karatz.[5]

Indeed, as previously noted, the government respectfully submits that it is in the interests of justice for defendant to

---

[4] The USPO also suggests that defendant's obstructive intent could only be established through reliance upon defendant's admissions as to his state of mind, and not based upon any objective evidence. In fact, however, there was ample evidence in the trial record that both defendant and Karatz were repeatedly advised that unauthorized backdating was a matter of SEC and Department of Justice scrutiny, and from this evidence it could be readily inferred that defendant and Karatz sought to conceal their activities, among other reasons, in order to evade this scrutiny from government regulators, which would also have placed their unauthorized gains from backdating at risk. In this connection, see, e.g., Trial Exhibits 217 and 252, attached as Exhibits A and B to this Memorandum, which clearly show that both defendant and Karatz were advised, and likely discussed, that the SEC was scrutinizing "the timing of option grants and pricing" during the spring and summer 2006.

[5] If the Court had concurred with the government's analysis and recommendation in the Karatz case and imposed a more onerous custodial sentence, the government's recommendation for defendant might well have included more onerous terms and conditions. Given the sentence already imposed on Karatz, however, the government respectfully submits that in this particular case the interests of justice and fairness dictate that Karatz's sentence serve as a benchmark for the Court in fashioning a reasonable sentence for defendant that is significantly more lenient than that imposed on Karatz.

13

receive a sentence significantly less onerous than that of Karatz, in view of the following three factors: (1) defendant pled guilty prior to even being indicted, and has fully accepted responsibility and expressed contrition for his offense conduct, unlike co-schemer Karatz; (2) defendant has cooperated in good faith and substantially assisted the government's investigation and prosecution of this matter, and accordingly is deserving of a significantly more lenient sentence for his substantial assistance to the government, as set forth in section II, above;[6] and (3) defendant played a less significant and influential role in, and benefitted to a much lesser extent from, the underlying offense conduct than Karatz, who has already received a sentence of five years probation with eight months of home detention.

In this connection, the government concurs with defendant's detailed identification of five different factors that demonstrate that defendant's degree of culpability for the offense conduct at issue was substantially lower than that of co-schemer Karatz, thereby warranting a significantly more lenient sentence for defendant. See Defendant Gary Ray's Response to Presentence Report and Related Letter to Court, at 3-6.

For all the reasons set forth above, the government respectfully recommends that the Court impose a sentence of three years probation, with no condition of home confinement, 400 hours

---

[6] This is a factor that could not be taken into account in the USPO's recommendation, as it requires a government motion, and it provides an independent basis for the Court to depart downward from the USPO's recommendation.

14

of community service, and a fine of $10,000.

V

CONCLUSION

For all the foregoing reasons, the government respectfully requests that the Court: (1) find that defendant's pre-departure total adjusted offense level under the advisory Guidelines is 18; (2) grant the government's motion for an eight-level downward departure in the advisory Guideline range based upon defendant's substantial assistance under USSG § 5K1.1; and (3) sentence defendant to a term of three years probation, with no condition of home confinement, 400 hours of community service, and a fine of $10,000.

Dated: December 6, 2010     Respectfully submitted,

ANDRE BIROTTÉ JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

_____/s/_____
PAUL G. STERN
HARVINDER S. ANAND
Assistant United States Attorneys
Major Frauds Section

Counsel for Plaintiff United States of America

15